UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARK TOMPKINS, | : |
| Petitioner, | : Civil Action No. 13-2425 (SDW) |
| v. | : **OPINION** |
| PAUL LAGANA, et. al., | : |
| Respondents. | : |

**APPEARANCES:**

    MARK TOMPKINS, *Pro Se* Petitioner
    #518749/100034b
    B-3-E #405
    Northern State Prison, P.O. Box 2300
    Newark, New Jersey 07114

    LUCILLE M. ROSANO, ESQ.
    ESSEX COUNTY PROSECUTOR'S OFFICE
    50 West Market Street
    Newark, New Jersey 07102
    Counsel for Respondents

**WIGENTON**, District Judge

    Petitioner Mark Tompkins challenges his 2004 New Jersey state court conviction in this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, the petition will be denied for lack of merit.

**I. BACKGROUND**

    A. Procedural History

On March 11, 2003, Mr. Tompkins was indicted by an Essex County Grand Jury, under Indictment No. 03-03-0893, on the charge of second-degree eluding in violation of N.J.S.A. 2C:29-2b. (ECF No. 1-1, Petitioner's Memorandum of Law at 3.) Mr. Tompkins was tried before the Honorable Martin G. Cronin, J.S.C., and a jury on September 14 and 16, 2004, with the jury returning a guilty verdict on September 16, 2004. (*Id*.) Judge Cronin sentenced Mr. Tompkins to a 15-year prison term with 7½ years parole ineligibility. (*Id*.)

Thereafter, Mr. Tompkins filed a direct appeal from his conviction and sentence before the Superior Court of New Jersey, Appellate Division. On December 8, 2006, the Appellate Division affirmed the conviction and remanded the matter for resentencing in light of *State v. Pierce*, 188 N.J. 155 (2006). (*Id*.) On February 23, 2007, the Supreme Court of New Jersey denied certification. *State v. Tompkins*, 189 N.J. 649 (2007). On March 15, 2007, Mr. Tompkins was resentenced to 15 years in prison with 7½ years parole ineligibility. (ECF No. 1-1, Pet. Mem. of Law at 3.)

On November 26, 2007, Mr. Tompkins filed a petition for post-conviction relief ("PCR") in state court. Following a hearing and oral argument, Judge Cronin denied the PCR petition on October 20, 2008, and Petitioner appealed. On March 4, 2011, the Appellate Division affirmed Judge Cronin's decision. (*Id*.) The Supreme Court of New Jersey denied certification. *State v. Tompkins*, 208 N.J. 338 (2011).

On September 13, 2010, while his state PCR petition was on appeal, Mr. Tompkins filed a *pro se* motion to amend the judgment of conviction to correct a clerical error that noted the judgment had been entered by guilty plea. Then, on October 28, 2010, Mr. Tompkins filed a *pro se* motion for a new trial based on newly discovered evidence, namely, that the eluding charge

2

for which he had been convicted was previously dismissed in municipal court. (ECF No. 1-1, Pet. Mem. of Law at 4.) On February 14, 2011, both motions were heard by the Honorable Robert H. Gardner, J.S.C. On that same date, Judge Gardner denied the motion for a new trial, and granted the motion to amend the judgment of conviction to reflect adjudication by jury trial rather than by guilty plea. (*Id.*)

Mr. Tompkins appealed from the decision denying his motion for a new trial. The Appellate Division affirmed Judge Gardner's ruling on July 16, 2012. The Supreme Court of New Jersey denied certification on January 31, 2013. (*Id.*)

On April 15, 2013, Mr. Tompkins filed this § 2254 habeas petition asserting only one claim, namely, that Petitioner is entitled to habeas relief because he was tried and convicted on a charge that had been dismissed previously, in violation of the prohibition against double jeopardy. (ECF No. 1; ECF No. 1-1, Pet. Mem. of Law at 5.)

Respondents filed an answer to the petition with the relevant state court record on September 6, 2013, arguing that the petition lacks merit and fails to state a claim for relief. (ECF No. 13.) On September 17, 2013, Mr. Tompkins filed a reply objecting to Respondents' answer. (ECF No. 14.)

On December 18, 2013, Mr. Tompkins filed a motion to compel discovery, (ECF No. 15), to which Respondents filed an opposition on December 23, 2013. (ECF No. 16.) Petitioner filed a reply on January 6, 2014. (ECF No. 17.)

On March 31, 2014, Mr. Tompkins filed a letter request to stay the proceedings in this habeas action pending review of a state court motion "to correct the record to reflect the actual court of dismissal." (ECF No. 19.) Respondents filed an opposition to this motion on April 3, 2014. (ECF No. 20.) Mr. Tompkins filed a reply on April 24, 2014. (ECF No. 21.)

B. Statement of Facts

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1), will simply reproduce the recitation as set forth in the December 8, 2006 opinion of the New Jersey Appellate Division as to Petitioner's direct appeal:

> On October 24, 2002, Officer Kevin Wright, Sr., of the Newark Police Department, was assigned to traffic enforcement at the entrance ramp to Route 78 on Lyons Avenue in Newark. Officer Wright was in uniform standing in front of his marked car which was parked on the shoulder on the ramp. Officer Wright was there to prevent drivers from making illegal left turns from the middle lane of Lyons Avenue, which is not designated as a turn lane, onto Route 78.
>
> Shortly before 3:00 p.m., Officer Wright "observed a gray vehicle make an illegal turn from the center lane." The officer made "a hand signal" directing the driver "to pull the car over." The driver stopped the vehicle about three car lengths in front of the officer's vehicle. The officer returned to his patrol car, put the lights on and "moved up closer behind the [defendant's] vehicle," intending to get the driver's credentials and issue him a summons. However, before Officer Wright could exit his patrol car, the driver made an "obscene" "hand gesture in the rearview mirror" and "took off down the ramp."
>
> Officer Wright then "activated" his siren, and proceeded to follow the vehicle "down the ramp" onto Route 78 eastbound, where he observed the car, a Pontiac Grand Prix, "dart across three lanes of traffic" at approximately eighty miles per hour. At that time, Officer Wright discontinued his pursuit because the car "wasn't going to stop for [him]" and he deemed that "the situation was dangerous." The officer had "documented" the license plate of the vehicle, and continued down Route 78 to the Clinton Avenue exit, which was the "next exit," to return to the police precinct to file a report. However, the officer did not call in the pursuit to the dispatcher at the time of its occurrence, as mandated by the Attorney General's Guidelines.
>
> Upon exiting Route 78 at the Clinton Ave exit, onto West [Runyon], [footnote omitted] Officer Wright observed that "the same gray vehicle had been involved in an accident" with another car at the intersection of West [Runyon] and Hillside Avenues. As the officer pulled up to the scene and observed the accident, he saw the "actor" of the gray vehicle, later identified as the defendant, dressed in a gray sweatshirt and blue jeans, "exit the car and begin to run."
>
> Officer Wright got out of his patrol car, called in a description of defendant's clothing and his location, and "engaged in foot pursuit" of defendant. The officer pursued defendant west from Hillside Avenue, "through an open lot, into [a] backyard," onto Irvin[e] Turner Boulevard, 'through another open lot," "then through the rear yards of the houses on

4

> Irvin[e] Turner" Boulevard. With the assistance of responding officers, Officer Wright eventually apprehended defendant in a stairwell leading to the cellar of an abandoned house on Irvin[e] Turner Boulevard, approximately two blocks from the accident. He was wearing the same clothes as described when the officer saw him leave his vehicle and begin to run.
>
> Defendant was arrested and transported to the police precinct by two other responding officers, while Officer Wright executed an accident report and "tow sheet." Officer Wright observed front fender damage to defendant's vehicle and damage to the front grill, hood and fender of the other vehicle. The gray Pontiac Grand Prix was registered to Bernice Tompkins, defendant's mother.
>
> Officer Wright issued "a summons for the illegal left turn, a summons for reckless driving, [a] summons for leaving the scene of an accident, and a summons for driving while suspended."

(ECF No. 13-6, Respondents' Appendix at Exhibit 6, *State v. Tompkins*, Docket No. A-5006-04T4, slip op at 3-5.)

## II.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, this Court has jurisdiction to entertain a petition for federal habeas relief as follows:

> [A] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

As to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).

"Clearly established Federal law" is determined as of the date of the relevant state court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. *Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Jamison v. Klem*, 544 F.3d 266, 274 (3d Cir. 2008). The state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court, *Williams*, 529 U.S. at 405, although district and appellate federal court decisions evaluating Supreme Court precedent may amplify such precedent, *Hardcastle v. Horn*, 368 F.3d 246, 256 n. 3 (3d Cir. 2004) (citing *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999)). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S. Ct. at 2155. The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Jamison*, 544 F.3d at 274–75. Few state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court

precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407.  A showing of clear error is not sufficient. *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003).  Nor is habeas relief available merely because the state court applied federal law erroneously or incorrectly.  *See Harrington v. Richter*, 131 S. Ct. 770, 785 (2011)  (stating that under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." (quoting *Williams* at 410)); *see also Metrish v. Lancaster*, 133 S. Ct. 1781, 1786–87 (2013); *Thomas v. Varner*, 428 F.3d 491, 497 (3d Cir. 2005); *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 131 S. Ct. at 786–87.  *See also Metrish*, 133 S. Ct. at 1787.

Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions. *See Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011); *Pinholster*, 131 S. Ct. at 1398; *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013).  *See also Harrington*, 131 S. Ct. at 786 (stating habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."); *Renico v. Lett*, 559 U.S. 766, 773 (2010) ("whether the trial judge was right or wrong is not the pertinent question under AEDPA"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)

7

("question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold"); *Lockyer*, 538 U.S. at 75 (stating it is not enough that a federal habeas court, in its independent review of legal question, is left with firm conviction that the state court erred). This standard applies even where "the state court analyzed and rejected a habeas petitioner's federal claims on the merits but gave 'no indication of how it reached its decision.'" *Grant v. Lockett*, 709 F.3d 224, 230 (3d Cir. 2013) (quoting *Han Tak Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012)).

A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001)(factual determinations of state trial and appellate courts are presumed to be correct). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id*. (citing *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982)).

Even if the petitioner is entitled to habeas relief, the court will grant the writ only if the error was not harmless. Under the harmless error standard, "a court must assess the prejudicial

8

impact of [the] constitutional error in [the] state-court criminal trial." *Fry v. Pliler*, 551 U.S. 112, 121 (2007).  A court should hold the error harmless unless it led to "actual prejudice," in the form of a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation omitted); *Eley v. Erickson*, 712 F.3d at 847.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *See Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010); *Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).

### III. DISCUSSION

In his petition, Mr. Tompkins raises only one claim for habeas relief.  He contends that his right against double jeopardy and his right to due process were violated when he was tried and convicted for the same eluding offense that had been dismissed by the municipal court on July 9, 2003 before his state court trial in September 2004.  Respondents argue that no double jeopardy exists because the municipal court eluding charge was dismissed after Mr. Tompkins had been indicted by an Essex County grand jury to ensure that Mr. Tompkins was not tried on both the municipal court complaint and the Essex County state court Indictment.

This claim was raised by Mr. Tompkins via motion for a new trial in state court.  At the February 14, 2011 hearing on Petitioner's motion, Judge Gardner ruled:

> Defendant's assertions regarding this dismissal[ ] from the Newark Municipal Court display a fundamental misunderstanding of the jurisdictional rules.  These dismissals were issued because of the indictment in superior court ... .  In this case, the defendant's case was dismissed because the superior court claimed jurisdiction over the entire matter.

(ECF No. 13-20, February 14, 2011 Transcript at 34:6-13.)

9

The Appellate Division affirmed Judge Gardner's decision on appeal, further noting that Mr. Tompkins' claims were procedurally barred because they either had already been raised or could have been raised in the prior appeals, pursuant to N.J.Ct.R. 3:22–4 and 3:22–5. (ECF No. 13-14, *State v. Tompkins*, Docket No. A-3354-10T4, slip op. at 6-7.)

The Double Jeopardy Clause forbids that "any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause "protects a criminal defendant from repeated prosecutions for the same offense," *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982), and affords the defendant a "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689 (1994). The Double Jeopardy Clause also incorporates the concept of criminal collateral estoppel, barring a subsequent prosecution dependent upon "an issue of ultimate fact [that] has once been determined by a valid and final judgment" in the defendant's favor in an earlier prosecution. *Thues v. Ryan*, Civil No. CV-13-00644-PHX-NVW, 2014 WL 3571687, *19 (D.Ariz. Jul 21, 2014) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)); *see also Dowling v. United States*, 493 U.S. 342, 347–48 (1990) (recognizing "the collateral-estoppel component of the Double Jeopardy Clause").

In this case, the state court found that the municipal court had no jurisdiction over the eluding offense once the Essex County grand jury returned an indictment against Mr. Tompkins on that offense in state court on March 13, 2003. Thus, the municipal court's *sua sponte* dismissal of the charge on July 9, 2003, was simply an administrative jurisdictional procedure to avoid a potential double jeopardy problem. Petitioner received neither a conviction nor an acquittal in the municipal court. He did not plead guilty or otherwise appear in municipal court for entry of a plea. Consequently, the Double Jeopardy Clause was never implicated and did not

bar his conviction on the eluding offense in New Jersey state court.  Therefore, Mr. Tompkins is not entitled to habeas relief on his double jeopardy claim because he has not shown that the New Jersey courts' adjudication of the claim was based on an unreasonable determination of the facts in light of the evidence presented, or was contrary to, or an unreasonable application of, established federal law.  *See* 28 U.S.C. § 2254(d)(1), (2).

Because this Court has determined that this petition lacks substantive merit and must be denied, Mr. Tompkins' motion to compel discovery (ECF No. 15), and his request for a stay (ECF No. 19), are denied as moot.

## IV.  CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  *See* Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## VI. CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, and a certificate of appealability will not issue. Further, Petitioner's motion to compel discovery (ECF No. 15), and his request for a stay (ECF No. 19), are denied as moot. An appropriate Order follows.

                                         *s/ Susan D. Wigenton*
                                         SUSAN D. WIGENTON
                                         United States District Judge

DATED: August 6, 2014